Robert L. Emery Jr.
TRCI #13650508
82911 Beach Access Rd.
Umatilla, OR. 97882
Pro Se

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

Robert L. Emery Jr.
     Plaintiff

Vs.

MICHAEL GOWER, Assistant Director of Operations,
Oregon Department of Corrections (ODOC);
TYLER BLEWETT, Superintendent,
Two Rivers Correctional Institution (TRCI);
CHRISTY HUTSON,
Behavioral Health Services (BHS) Administrator;
Ms L. DAVIS, TRCI Legal Librarian;
SAN JUANITA ROSALES, BHS Manager,
TRCI; JOE BUGHER, Assistant Director,
Health Services, ODOC; S. MARTIN,
Legal Librarian Coordinator, TRCI;
MARK NOOTH, East-side Institutions Coordinator,
ODOC; MS ISLES,
Americans with Disabilities (ADA) Coordinator,
TRCI; LINDA SIMON, Assistant Superintendent,
TRCI; S. RAY, Acting ADA Coordinator;
M. VENTURA, Statewide ADA Coordinator,
ODOC; M. MAYENSCHEIN, Legal Coordinator,
M. PERRY, Acting Assistant Superintendent Corrections;
K. JACKSON, Acting Superintendent for T. Blewett,
TRCI  TRCI; JOHN AND JANE DOE(S),
TRCI and ODOC,

     Defendants

**Each sued in their individual and/or official capacities.**

Case # 2:20-cv-01691-MC

42 U.S.C. 12101 et seq (Americans with
Disabilities Act) 42 U.S.C. §1983
(Violation  of Civil Rights  Under Color
of Law)

**FIRST AMENDED VERIFIED
COMPLAINT**

**Demand for Jury Trial**

Complaint §1983

INTRODUCTORY STATEMENT

1.

This Americans with Disabilities Act, and Civil Rights Action is brought by plaintiff Robert L. Emery Jr. in which he seeks relief for the defendants violations of his rights secured by the ADA of 1990, 42 U.S.C. 12101 et seq. And the United States Constitution, including the First and Fourteenth Amendments, by the Civil Rights Act of 1871, 42 U.S.C. 1983.

2.

Plaintiff who is a prison inmate suffering from serious mental and physical illness, is presently incarcerated in the Mental Health Unit (MHU) at TRCI, plaintiff is diagnosed with Major Depression, Suicide Ideation, Attention Deficit Hyperactivity Disorder (ADHD), Severe Anxiety, Unspecified Personality Disorder, Bone Spurs and Achilles Tendinitis in both feet which cause severe, chronic pain and suffering.

3.

While incarcerated at TRCI plaintiff has filed a number of complaints against TRCI staff members about instances of mistreatment. Plaintiff has also made complaints to outside organizations regarding conditions inside his unit and the "treatment" he receives therein and within TRCi in general. Plaintiff has two pending civil rights cases in the U.S.D.C. (Dist. Of OR) Case #'s 2;18-cv-02096-MC and 2;19-cv-01070-MC at this time, this current complaint is alleging that the denial of adequate access to a legal library, and or its resources is negatively affecting pending litigation, and is causing actual physical harm to plaintiff.

4.

Plaintiff filed a series of Motions in both pending cases including a MOTION FOR PRELIMINARY INJUNCTION BASED UPON A MEDICAL EMERGENCY, almost all of Plaintiffs Motions,

including this one in particular were denied due to plaintiffs inadequate access to a legal library and or its resources which rendered his pleadings inartfull, inadequate, lacking proper case law, because plaintiff was denied access to a computer or other means to sheperdize cases, access to proper and current legal books, qualified appropriate legal assistance from legal aides, and TRCI's refusal to accomodate plaintiffs special needs, retaliation for filing complaints which chilled plaintiffs right to free speech and frightened him. Each defendant named herein after being informed of the violations through a report, grievance, letter, or appeal, failed to remedy the wrongs. The defendants created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, the defendants were grossly negligent in supervising subordinates who committed the wrongful acts or the defendants exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Defendants actions have caused actual injury to existing litigation and physical injury caused by inability to properly and adequately present a Motion for Preliminary Injunction, this prejudice led to a deterioration of existing physical injuries and now further surgeries on both feet.

5.

Via this action, plaintiff seeks to vindicate his right to access to the courts, and to be free from improper, illegal behavior, censorship, retaliation,and ADA violations from staff.

JURISDICTION AND VENUE

6.

Jurisdiction exists under 28 U.S.C. 1331 because this action arises under the laws of the United States. This Court has jurisdiction over plaintiffs claims under 28 U.S.C. 1343 because plaintiff has brought this action to seek redress for the deprivation of rights secured by the United States Constitution, and the ADA.

7.

Venue is proper because the acts and ommisions alleged herein occurred in Umatilla County, Oregon.

8.

PARTIES

Plaintiff Robert L. Emery Jr. is an adult citizen of the United States and the State of Oregon who has been in custody of ODOC, and housed in the MHU at TRCI in Umatilla Oregon, at all times relevant to this complaint.

9.

Defendants are and were employees of ODOC at all time material to this complaint. At all times relevant herein, each defendant acted under color of state law and within the course and scope of their employment. Each defendant is sued individually under 1983, and officially under the ADA statutes. Each defendant named herein through his or her own individual actions violated plaintiffs constiutional and or ADA rights.1

10.

Defendant Michael Gower was at all times relevant the Assistant Director of Operations of ODOC and is sued in his individual and official capacity as appropriate for failure to take corrective action once notified via kytes, letters grievances, and appeals that wrongful, unconstitutional acts were/are occurring.

11.

Tyler Blewett was at all times relevant the Superintendant of TRCI and is sued in his individual and official capacity as appropriate for failure to take corrective action once notified via kytes, letters, grievances, appeals that wrongful, unconstitutional acts were/are occurring.

12.

Christy Hutson was at all times relevant the BHS Administrator for ODOC and is sued in her individual and official capacity as appropriate for failure to take corrective action once notified via kyte, letter, grievances, appeals that wrongful, unconstitutional acts were/are occurring.

13.

L.Davis was at all times relevant the legal librarian at TRCI and is sued in her individual and official capacity as appropriate for failure to take corrective action once notified that wrongful, unconstitutional acts are/were occurring.

14.

San Juanita Rosalas was at all times relevant the BHS manager at TRCI and is sued in her individual and official capacity as appropriate for failure to take corrective action once notified via letter, kyte, grievances, appeals, that wrongful, unconstitutional acts were/are occurring.

15.

Joe Bugher was at all times relevant the Assistant Director of Health Services at ODOC and is sued in his individual and official capacity as appropriate for failure to take corrective action once notified via kyte, letters, grievances, appeals, that wrongful, unconstitutional acts were/are occurring.

16.

S. Martin was at all times relevant the Legal Librarian at TRCI and is sued in her individual and official capacity as appropriate for failure to take corrective action once notified via kyte, letter, grievances, appeals, that wrongful, unconstitutional acts were/are occurring.

Complaint §1983                                                                 Pg. 5 Of 35

17.

Mark Nooth was at all times relevant the East-Side Institutions Coordinator for ODOC and is sued in his individual and official capacity as appropriate for failure to take corrective action once notified via letter, kytes, grievances, appeals, that wrongful, unconstitutional acts were/are occurring.

18.

Ms. Isles was at all times relevant the ADA Coordinator at TRCI and is sued in her individual and official capacity as appropriate for failure to take corrective action once notified via letter, kyte, grievances, appeals, that wrongful, unconstitutional acts were/are occurring..

19.

Linda Simon was at all times relevant the Assistant Superintendant/ADA Coordinator at TRCI and is sued in her individual and official capacity as appropriate for failure to take corrective action once notified via kyte, letters, grievances, appeals that wrongful, unconstitutional acts were/are occurring.

20.

S. Ray was at all times relevant the acting ADA Coordinator at TRCI and is sued in his individual and official capacity as appropriate for failure to take corrective action once notified via kyte, letter, grievances, appeals, that wrongful, unconstitutional acts are/were occurring.

21.

M. Ventura was at all times relevant the Statewide ADA Coordinator for ODOC and is sued in his

individual and official capacity as appropriate for failure to take corrective action once notified via kyte, letter, grievances, appeals, that wrongful, unconstitutional acts were/are occurring .

22.

M. Mayenschein was at all times relevant the legal librarian at TRCI and is sued in her individual and official capacity as appropriate for failure to take corrective action once notified via kyte. Letter, grievances, appeals, that wrongful, unconstitutional acts were/are occurring.

23.

Defendants Mayenshein, Perry, Jackson, Gower, Blewett, Hutson, Bugher, Nooth, Ventura, Isles, Davis, Martin, Simon, Rosalas, and Ray, personally participated in the wrongful acts described herein, when they, after being informed of the constitutional/ADA violations through grievances, appeals, reports, letters, kytes, failed to remedy the wrongs. The defendants created a policy or custom under which constitutional practices/ ADA violations occurred, or allowed the continuance of such a policy or custom, the defendants were grossly negligent in  supervising subordinates who committed the wrongful acts, and or the defendants exhibited deliberate indifference to the rights of inmates by failure to act on information indicating that unconstitutional acts/ADA violations were occurring. Defendants actions have caused actual injury to existing litigation and physical injury (due to the injury to existing litigation), plaintiff was unable to, research, sheppardize caselaw, or have access to properly trained legal aides or other assistance which prevented plaintiff from properly presenting and arguing a Motion for Preliminary Injunction Based Upon A Medical Emergency (along with other Motions) which has led to a worsening of his physical disabilities which are being litigated in other cases and now requires further surgeries for which plaintiff is scheduled.

24.

The named defendants are refusing to accomodate plaintiffs special needs denying him equal access to the courts via legal libraries, and their resources including proper and current legal books, computers, trained legal aides (they have received no formal training from DOC or any other source),  and are subjecting plaintiff to retaliation and or censorship for filing complaints about this denial of access to

the courts.

25.

Plaintiffs disabilities are protected under the United States Constitution and the ADA, plaintiff is subjected to discriminatory treatment by all named defendants who intentionally treat plaintiff differently from similarly situated inmates which violates his rights under the equal protection clause and the ADA. The named defendants have and are depriving plaintiff of a liberty and or property interest without notice, and the opportunity to be heard.

Furthermore the named defendants have taken adverse action against plaintiff by denying him equal access to a legal library and or its resources. These are rights that are protected under the U.S. Constitution and the ADA. This adverse action chilled plaintiffs First Amendment Rights and frightened him. These actions did not advance any legitimate correctional goal. The named defendants deny MHU inmates equal time and access to the legal library and or its resources compared to other inmates in general population because of our mental health status and or other disabilities. All other units at TRCI are provided time throughout the weekdays from approximately 8:00 am to 3:30 pm to conduct research, etc. MHU however is only allowed one day a week (Wednesday) from approximately 8:00 am to 10:00am to "accomodate our special needs". This equals less time and resources because even though MHU can technically go to the legal library with general population inmates throughout the weekdays it is always too loud, too crowded, and too noisy, to conduct any research or legal work of substance due to SMI issues. The legal aides (in name only) are hired directly from the TRCI workpool and have no real training at all, and whatever knowledge they do bring with them to the job they are given orders too not directly help us, or face termination from their jobs, this can be evidenced by the "administrative removal" of my previous legal assistant who was not given a reason for his removal.

26.

Plaintiff is diagnosed with Serious Mental Illness (SMI) Major Depressive Disorder, Suicide Ideation, ADHD, Severe Anxiety, Unspecified Personality Disorder, Bone Spurs, and Achilles Tendinitis,, plaintiffs mental and physical disabilities negatively effects his everyday life and causes him

difficulties in managing his activities of daily living.

## FACTUAL ALLEGATIONS

### 27.

Plaintiff has two pending civil rights lawsuits in The United States District Court, (Dist. Of OR.) Emery v. Nooth et al. Case Numbers # 2;18-cv-02096-MC and 2;19-cv-01070-MC. These case involve many claims of abuse and mistreatment surrounding deliberate indifference and inadequate access to medical and mental health care which is subjecting plaintiff to severe chronic pain and suffering. [To be clear here in order to avoid any claim or issue preclusions, "these claims" are not at issue here, they are only mentioned to give context to the physical harm being done to plaintiff].

### 28.

On or about 8-30-19 plaintiff went to the legal library to buy copies of an Investigative Report written by Disability Rights Oregon (DRO) which is a PAMMI group authorized by the Federal Government per 42 U.S.C. 10801 et seq. To investigate and report on instances of abuse and mistreatment of mentally ill prisoners.

### 29.

This report is public record and was/is to be used as evidence in both of plaintiffs pending cases to show systemic deliberate indifference and retaliation.

### 30.

The Report is titled INDEPENDENT INVESTIGATION OF THE DEATH OF MICHAEL BARTON:

MENTAL ILLNESS & MEDICAL NEGLECT IN AN OREGON PRISON, (and details the medical and mental neglect prisoners suffer in ODOC as Mr Barton was literally allowed to be eaten alive by a MRSA infection as medical and security stood by and watched.

31.

There is no legitimate peneological interest for the censorship of this report as it poses no threat to the safety and security of the institution and is a matter of public record.

32.

DRO gives people "written permission" on the inside cover of the report to photocopy the report, when the legal librarian defendant Martin saw this report she grew visibly agitated and refused to allow plaintiff to purchase copies of it (even though he was willing and able to pay then and there), because based upon information and belief defendant Martin saw the report and recognized its damning information contained inside and wanted to protect TRCI from the pending lawsuits, this is further evidenced in the defendants later denials of grievances and complaints wherein they conspired and parroted the same language, and intentionally misquoted rules and sections of the Legal Photocopy Request Form to justify denying plaintiffs grievances and appeals and thus censoring him.

33.

Due to defendant Martin's censorship Plaintiff had to seek out other sources in order gain copies of this report. And though he was successful in this, it does not excuse Defendant Martin's censorship, and unless this Court intervenes, she is likely to do it again in the future and Plaintiff may not have other alternatives at that point.

34.

On 8-30-19 plaintiff filed a grievance TRCI-2019-09-005 against defendant Martin for not allowing plaintiff to self purchase photocopies of evidence in a federal civil rights lawsuit based upon censorship

Complaint §1983                                                                                              Pg. 10 Of 35

(i.e. retaliation)(emphasis mine).

35.

Defendant Martin responded saying that "The law library does not make copies of articles", and "there was no court rule provided on your Request indicating these were a requirement of the court per OAR 291-139"

36.

Plaintiff appealed stating "This was not an [article] by DRO, This was an [Investigative Report] by an authorized organization and is evidence in two pending cases, and even if it [was] an article from a newspaper it can still be considered as evidence if presented to a court as such despite the OAR's". Also I clearly stated on the Legal Photocopy Request Form that "this pertained to my pending cases and this denial is nothing but an attempt to silence me".

37.

Plaintiff appealed this denial stating that the Legal Photocopy Request Form has [no] section requiring I provide court rules to get copies of evidence (as long as I am paying for it at the time the copies are requested, which I was).

38.

The SECTION C [which is used to deny this appeal] is ONLY for "indigent inmates", and is printed on the Form, ["SECTION C- Required photocopies"].

39.

Paying inmates fill out SECTION B which only asks for number of pages and is printed on the form

["SECTION B-Requested photocopies"] and asks "Title of Document(s) to be copied".

40.

The difference between these Sections is one is for REQUESTED documents and the other is for REQUIRED photocopies.

41.

Document(s) is defined as anything with a message on it, to furnish documentary evidence, to provide with exact references to authoritative supporting information. This [court rule] argument by defendant Martin is a false narrative and semantics game defendant Martin was/is playing to censor and retaliate against plaintiff for his filing of complaints, as evidenced by ODOC's own Legal Photocopy Request Form.

42.

This final appeal was denied on 12-30-19 and concluded the grievance process.

43.

On 8-30-19 plaintiff filed grievance TRCI-2019-09-033 claiming that defendant Martin refused to allow purchase of photocopies of an Investigative Report thereby denying me access to a legal library, and or its resources.

44.

This grievance was denied as being duplicative of grievance TRCI-2019-09-005.

45.

Plaintiff appealed stating this is not duplicative, the incident is the same but the issues are not, TRCI-2019-09-005 was for censorship and this one is for denial of access to the legal library and or its resources, I cannot file two issues in one grievance per OAR 291-109-0140 (5) as you know or you will dismiss it for more than one issue per grievance, as you have in the past.

46.

Each issue must be grieved separately even if they arose from the same incident.

47.

This Appeal was denied stating"the grievance rule does not permit a returned grievance or grievance appeal to be appealed therefore this appeal is denied.

48.

Plaintiff filed the final appeal stating that " these are separate issues per your rules, I am being denied access to the legal library and its resources, this is a separate issue from illegal censorship.

49.

This final appeal was denied stating "denied grievances cannot be appealed.

50.

On 5-19-19 plaintiff sent a two page kyte to defendant Rosales stating in effect " I have ADHD and other SMI that prevent me from going to and using the legal libraries word processors, that I need quiet and solitude to concentrate and asked for a portable NEO word processor as is given to other inmates.

51.

Defendant Rosales responded stating " contact the ADA coordinator", and that "I have no diagnosis that would support the request for this device", and that "I could get assistance in the law library".

52.

On 6-26-19 plaintiff sent a kyte to defendant Isles stating "I wrote you last week asking for a word processor due to my ADHD and ongoing legal cases and offered to buy my own if none were available, and also complained that the legal library is too small, crowded, loud".

53.

Defendant Isles responded "I checked with Health Services and I do not currently have a health condition documented that would support authorization of this device".

54.

This response by defendants Rosales and Isles are not true, plaintiff is and was diagnosed with ADHD and severe anxiety at these times, these SMI are recognized by the ADA as disabilities.

55.

On 8-11-19 plaintiff sent a kyte to the Superintendent of TRCI stating that "I filed a Discrimination Complaint on 7-12-19 and Ms Eynon (the grievance and discrimination coordinator) is refusing to process this complaint, I wrote to her and she is refusing to answer my kyte".

56.

Defendant Simon responded saying "Ms Eynon must have given you a reason for denying this complaint, what is her reason"?.

57.

On 8-14-19 plaintiff wrote a kyte to the Superintendent responding to the previous question, "Ms Eynon did not respond to my kyte at all nor did she assign me a case number to it".

58.

Defendant Simon replied "please refer to OAR- 006 I encourage you to be patient & allow staff time to respond".

59.

Upon information and belief however, staff are required to log and file complaints within specified timelines per their own Rules and Regulations and when they go beyond these deadlines as Ms Eynon did (and does on a regular basis) plaintiff pursues the matter via kytes to document the refusal to follow their own Rules and Regulations because Ms Eynon is very quick to dismiss any complaints/appeals that are not filed by prisoners by their deadlines and so plaintiff holds staff equally accountable to their own Rules & Regulations.

60.

Upon information and belief, and based upon personal experience, Ms Eynon throws away, or makes disappear bothersome complaints, [she allows a number to go through in order to cover her tracks] but many of these end up in a trash can somewhere, many of plaintiffs grievance and or discrimination complaints go missing regularly and plaintiff has been complaining to Ms Eynon about this for 5-6 years.

61.

On 9-16-19 plaintiff sent another kyte to defendant Isles complaining about conditions within the legal library which is not handicap accessible.

Complaint §1983                                                                                              Pg. 15 Of 35

62.

Defendant Isles decided this time to issue a NEO machine to accommodate plaintiffs special needs. This accommodation substantiates the Plaintiff's needs for special attention to his ability to access the courts in a meaningful manner.

63.

On 9-24-19 after receiving the NEO machine plaintiff wrote to defendant Isles asking again to reinstall the legal computers and typewriters on the MHU so plaintiff could conduct research on FASTTRACKS, and read what few law books that are available because of conditions in the law library.

64.

Defendant Isles referred this matter to the Operations Captain and defendant Simon who never responded.

65.

On 9-25-19 plaintiff wrote defendant Isles thanking her for the NEO machine [because at first plaintiff liked it very much],  but then that changed when plaintiff went to the law library a week or two later to plug it into the legal libraries computer and discovered that it would not format documents, was skipping and adding words, misplacing information, and all of it had to be formatted and reconfigured by a legal aide by hand (because plaintiff could not do it himself).

66.

This information was related to medical and mental health treatment and violated HIPPA laws as plaintiff was [forced due to circumstances] to allow another inmate to read his medical and mental health care information, [this can often lead to assaultive, and or abusive behavior by other inmates if

they learn an inmate is particularly vulnerable due to medical and or mental health issues] and placed plaintiff at risk of imminent and or future harm.

67.

Defendant S. Ray replied " These (NEO machines) are all we have, they all have to be adjusted & formatted when printing, they all work the same, their is no fix for this, these are the only types of word processor we have for AIC's use".

68.

This statement by defendant S. Ray amounts to an admission of a party opponent per Fed. R. Evid. 801 (d)(2). The other problem here is that legal aides are not normally available for such services and plaintiffs SMI prevents him from working in the legal library as it is currently set up. Defendants Isles and Ray, as A.D.A. Coordinators, have a **DUTY** to accommodate inmate special needs and to provide *adequate, working* work processors, or other such devices that acutally do what they're suppose to do, i.e. to accommodate these special needs. Defendant Ray admits that these machines do not work, and therefore, he and Isles are refusing to accommodate smi inmate needs by failing to perform their duties. By not performing their duties they force Plaintiff to allow other inmates access to his medical/mental health information, violating HIPPA laws and consequently placing the Plaintiff in harms way as inmates in a prison setting tend to pray upon other inmates they perceive as weak mentally or physically.

69.

On 1-21-20 and 2-9-20 plaintiff sent kytes to defendants Rosales and Simon asking again that the computers be placed back on MHU to accommodate special needs. Defendant Rosales replied " you can access legal library on Wednesdays with MHU residents".

70.

Complaint §1983                                                                                      Pg. 17 Of 35

And defendant Simon replied "the computer will not be back on the MHU. You have the opportunity to go to the law library on Wednesday mornings when no other units have AIC's in the library".

71.

These replies also qualify as admissions of a party opponent under the Fed. R. Evid. 801 (d)(2), as defendant Davis, now claims that this accommodation was never made at all and refuses to provide this time to MHU or plaintiff [despite the earlier assertions by defendants], and again in a more recent kyte sent to defendant Simon dated 9-9-20, Simon asserted on 9-14-20 that this accommodation "does" still exist (despite Davis's denials and refusal to accommodate these needs)(emphasis mine), so plaintiff is clearly being given the run around in retaliation as evidenced by defendants own contradicting responses to kytes.

72.

Plaintiff wrote a letter to defendant Gower (in Salem) and related these issues to him, I told him that defendants Rosales and Hutson (both Behavioral Health Staff) were told by Security according to other staff members to "stay out of this".

73.

On 2-19-20 defendant Gower responded by sending the complaint back to TRCI staff, thus setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others which he knew, or reasonably should have known, would inflict constitutional injury.

74.

On 2-20-20 defendants Gower, Ventura, Rosales, Perry, Martin, Davis, Mayenschein, and Jackson all refused to take corrective action on these issues in doing so they established and/or carried out a policy which results in violations of the Plaintiff's constitutional rights, which they knew or reasonably should

have known would inflict constitutional injury.

75.

Plaintiff wrote another letter to defendant Hutson describing the conditions within the legal library, including an incident one Wednesday morning when MHU was scheduled for their "accommodated time", where defendant Martin was playing with inmate Garza's dog [inmate Garza is a TRCI dog rescue trainer on the MHU who was also there to conduct legal research] in the law library while plaintiff was trying to study, she had the dog barking, jumping on her desk, playing, while she spoke to the dog and loudly laughed, this is but one example of the contempt and disregard for SMI inmates and their special needs, and an example of their so called special accommodations.

76.

Plaintiff also relayed information that Ms Eynon [the grievance and discrimination coordinator] was refusing to process Discrimination complaints, playing semantics games etc. in order to help TRCI avoid future lawsuits, many of these grievances and discrimination complaints simply "disappeared".

77.

On 1-15-20 plaintiff sent a kyte to defendant Simon to complain again about conditions inside the legal library, defendant Simon responded "TRCI is consistent with other institutions".

78.

On 1-21-20 plaintiff filed grievance TRCI-2020-01-099 claiming that he'd been called to the BHS/MDT meeting to discuss putting the computers/typewriters back on the MHU to accommodate special needs and plaintiff notified them that this was causing actual harm to his pending lawsuits, i.e. interfering in my ability to conduct legal research and that this was violating my Constitutional and ADA rights.

79.

In this meeting defendant Rosales stated "ODOC doesn't provide quiet rooms, so she isn't going to".

80.

I replied that I'd follow this up in court and Ms Rosales replied "sometimes we need to be told what to do".

81.

Upon information and belief BHS staff are threatened and or coerced by Security staff to go along with [what they say] in order to [get along], and Security's main objective is to protect TRCI from plaintiffs lawsuits which they know have been very effective in the past.

82.

Defendants Rosales and Hutson denied this grievance but did not dispute my recitation of the conversation during this meeting BHS/MDT, which is an admission in and of itself.

83.

Plaintiff filed his first appeal claiming just because other institutions do not accommodate special needs does not excuse TRCI from accommodating them.

84.

Defendant Hutson denied this appeal reasserting the line all other defendants are/were parroting i.e. that other prisons do not do this so TRCI wont.

85.

(and it should be noted here that TRCI is situated far differently than all other ODOC prisons in that it is made up of small individual separate and isolated units meant to keep inmates from other units mingling, and TRCI's units all have two rooms that were in fact once legal libraries equipped with computers and typewriters.

86.

Comparing TRCI's prison to others is like apples and oranges, TRCI is uniquely equipped to accommodate SMI inmates special needs in this manner i.e. providing "quite rooms" that do already exist and are available to inmates on AHU. (Similar rooms also exist for video visits, legal phone calls, music rooms, educational studies via computer).

87.

Plaintiff filed his second and final appeal reciting earlier claims.

88.

Defendant Bugher denied this Appeal reciting the same responses as other defendants.

89.

On 1-1-20 plaintiff sent a kyte to defendant Rosales memorializing our conversation in the MDT/BHS meeting and asked her (as a top prison official) that all records, emails, texts, etc. be preserved regarding this issue as they may be deemed evidence in possible future litigation.

90.

Defendant Rosales acknowledged the letter and thanked plaintiff for advocating for himself.

91.

On 1-21-20 plaintiff filed a Notice of Tort Claim with Risk Management in Salem, Case number L169279 laying out these claims.

92.

On 8-6-20 this Notice of Tort was denied.

93.

On 8-19-20 plaintiff sent a complaint to defendant Simon about his legal mail being opened and read in the mail room, this was documented by unit staff Cpl Hancock in the units logbook, plaintiff stated that he wouldn't have minded if this was a single occurrence but this regularly occurs at TRCI, defendant Simon acknowledged the incident, apologized and promised it wouldn't happen again, though she has previously made this same apology and promise to plaintiff about the same issue in another earlier case.

94.

 Furthermore the Department of Justice was recently chastised by Judge Eva Temple in the Umatilla County Circuit Court Case # 20CV21080 for allowing ODOC/TRCI to refuse attorneys access to their clients in prisons across Oregon, based upon frivolous Covid 19 claims, (this is frivolous because prisoners could still call their attorneys on the telephones available to them on the units, yards, dayrooms, etc). The only difference being that the calls made by attorneys [could not] be monitored, whereas the calls made by inmates [could be] monitored and shared with the DOJ.

95.

These blatant abuses by ODOC/TRCI of the attorney/client privilege only go to show the utter contempt and disregard for inmates constitutional rights, and the rule of law.

96.

Plaintiff has exhausted all available remedies with respect to the claims stated herein to the best of his abilities as allowed him by defendants, defendants have all refused to take any corrective action.

97.

These incidents have caused actual physical harm to plaintiff and pose a threat to him in the very near future.

98.

All but two or three Motions to Extend Time in both of plaintiffs cases have been denied due to inadequate, improper, pleadings, arguments, case law.

99.

These Motions, including a Motion for Counsel, for Preliminary Injunction, and a Motion to Expedite The Preliminary Injunction based upon Medical Emergency should have easily been won by plaintiff as this particular case involves Security staff refusing to obey a treating physicians written orders which then led to two surgeries and now possible future surgeries.

100.

Plaintiffs inartfull and inadequately argued Motions lacked the prerequisite information that plaintiff could have obtained had he had access to the legal library and its resources including but not limited to

assistance, proper legal books, forms, etc. this so called legal library is only deteriorating as TRCI just administratively and without cause removed one of the only legal aides that was capable, and willing to render assistance in secret, [he will be filing his own suit over this library in the very near future], TRCI also removed defendant Mayenschein from her job because upon information and belief she was helping inmates "too much" by allowing aides to render assistance etc. defendant Mayenschein was replaced by defendant L. Davis from Security Ops. Who is now running the law library with an iron fist.

101.

Instead of a legal library, plaintiff was forced to rely solely upon the fourteen Prisoner Self Help Books that he owns himself to file and litigate those cases as well as this one.

102.

The defendants actions in this case are/were willful, intentional, malicious, retaliatory, and meant to interfere with, delay and or deny plaintiffs access to the courts, and refuse to accommodate plaintiffs special needs.

103.

There is no legitimate peneological interest in denying plaintiff access to the courts and or refusing to accommodate plaintiffs special needs by returning the legal libraries to the MHU, these rooms already exist, they are wired for this purpose, and until recently existed on all units at TRCI and in fact still exist on AHU, i.e. protective custody.

104.

TRCI's attempts at so called [accommodations] of SMI inmates needs is nothing more than window dressing made up to present a false narrative.

105.

TRCI provides an [antiquated] Neo word processor machine that they themselves admit is basically useless due to its antiquity.

106.

Defendants Davis and Simon then claimed that they provide 1-2 hours per week on Wednesday mornings for all of MHU (which should be noted here that defendants have repeatedly asserted this [accommodation] of 1-2 hours Wednesday mornings for all MHU inmates as a fact throughout their responses to numerous kytes, grievances, and complaints, made by plaintiff to justify not placing the legal libraries back on the MHU, and then in a kyte initiated by plaintiff on 9-9-20 and answered on 9-11-20 by defendant L. Davis, she wrote "Not true" on the kyte when plaintiff questioned her about this so called [accommodation] on Wednesday mornings. She then proceeded to schedule plaintiff for the law library on 9-16-20, Wednesday morning at 900 am [along with many other inmates from different units]. Again on 9-20-2020, Plaintiff requested legal library time to try to utilize the computers for legal research. Plaintiff was scheduled on 9-29-2020 [Tuesday] at 1:00 to 3:00PM which was full of inmates from other units [a complete contradiction to Defendant's claims of "accommodating special needs" by setting Wednesday mornings aside for MHU inmates] later that day Plaintiff sent kytes to Defendants Simon and Blewett requesting that they "preserve security camera footage" from the law library on 9-24-20 @ 1 to 3PM as evidence in this case.

107.

This action of defendants Davis and Martin rescinding and or denying this accommodation was ever made was nothing more than pure retaliation for complaining, and a not so subtle point that [they] are in charge.

108.

In his LAW LIBRARY REQUEST FORM, GENERAL POPULATION dated 9-4-20 plaintiff requested

access to a word processor and a legal assistant to format and fix his NEO files

109.

The newest legal librarian defendant Davis was previously working in Security Operations and upon information and belief has a particular hatred for inmates who sue ODOC.

110.

Defendant Davis has shown an obvious hostile attitude towards plaintiff after learning of his two pending suits against ODOC staff.

111.

Defendants refuse to provide adequate, meaningful access to law books, forms, assistance, and time in the library itself, the legal aides (in name only) are prohibited from rendering any real help to inmates such as help writing complaints, claims, motions, etc.

112.

 Their only real job is to pass out a few basic plain forms and helping turn on computers, and giving generic unhelpful advice

113.

Upon information and belief all defendants have been conspiring with other ODOC legal law libraries via emails, texts, phone calls, etc. to deprive plaintiff (inmates) of Federal Civil Rights, i.e. access to the courts, and ADA rights.

114.

Further actual harm is done to plaintiff by preventing him access to books, computers, to learn how to perform adequate meaningful Discovery such as Deposing defendants or conducting other basic Discovery which is needed to defeat Summary Judgment Motions.

115.

This is an impairment of litigation of non frivolous claims in its simplest form.

116.

Defendants also prohibit "Jailhouse Lawyers" from rendering assistance despite their own policy of prohibiting legal aides from helping with writing complaints, this is done to deter lawsuits as well and it is already established case law that when prisons do not provide adequate law libraries and or assistance then Jailhouse Lawyers [do] have a right to give assistance.

117.

This Intentional Interference will surely cost plaintiff both of his pending lawsuits in the U.S.D.C. If defendants are allowed to continue denying plaintiff access to the courts, refuse to accommodate his special needs, and conspire and retaliate against him chilling his right to free speech.

118.

### FIRST CLAIM FOR RELIEF

Americans With Disabilities Activities(42 U.S.C. 12101 et seq.)

119.

Plaintiff re-alleges each and every allegation of paragraphs 1 through 118, and incorporates those

allegations herein by this reference.

120.

Plaintiff suffers from physical and mental disabilities that interfere with his major life activities, including Major Depression, Suicidal Ideation, Attention Deficit Hyperactivity Disorder, Severe Anxiety, Unspecified Personality Disorder, Achilles Tendinitis, Bone Spurs, Calcification of the Achilles Tendons. Defendants knew of or should have been aware of, plaintiffs disabilities.

121.

Defendants subjected plaintiff to discrimination on the basis of his physical and mental disabilities and were deliberately indifferent to the need to accommodate those disabilities, which effectively deprived plaintiff the benefits of the services, programs, and activities by TRCI to other prison inmates, including, appropriate grievance and discrimination procedures, access to the legal library, access to adequate legal books, legal assistance, legal resources, and to the courts themselves. Plaintiff was otherwise qualified to access these services, programs, activities. Due to the fact that these ADA violations occurred in conjunction with Constitutional violations, plaintiff is entitled to punitive, compensatory, damages, and attorneys fees (at market rates), as well as injunctive and declaratory relief against defendants in their individual capacities in an amount sufficient to punish them and to deter others from similar conduct.

122.

TRCI is an institution that serves the public and receives funding from the federal government.

123.

## SECOND CLAIM FOR RELIEF

Deprivation of Federal Civil Right

Fourteenth Amendment Due Processors(42 U.S.C. 1983)

124.

Plaintiff re-alleges each and every allegation of paragraphs 1 through 118, and incorporates those allegations herein by this reference.

125.

As described above, Plaintiffs SMIs include Major Depressive Disorder, Suicide Ideation, ADHD, Severe Anxiety.

126.

The Fourteenth Amendment to the United States Constitution forbids defendants from depriving plaintiff of his liberty without due process of law.

127.

Defendants actions, denying plaintiff access to the courts via a law library and or adequate, meaningful resources without  legitimate hearings, written statements of the reasons or records of proceedings, deprive plaintiff of his right to due process of law and violates his rights under the ADA.

128.

Defendants actions do not follow proper prison disciplinary procedure, Rules and or Regulations, applicable state or federal law. These wrongful arbitrary actions deprive plaintiff of his constitutionally protected liberty without due process.

129.

Defendants actions have been malicious, deliberate, intentional, and embarked upon with knowledge of, or in conscious disregard of, the harm that would be inflicted on plaintiff, particularly given his severe, active, SMI. These actions caused direct harm to plaintiff. As the result of this intentional conduct, plaintiff is entitled to punitive damages against defendants in their individual capacities in an amount sufficient to punish them and to deter others from similar conduct.

130.

Defendants violated rights held by plaintiff which were clearly established, and no reasonable official similarly situated to defendants could have believed that his or her conduct was lawful or within the bounds of reasonable discretion. Defendants thus lack qualified or statutory immunity from suit or liability.

131.

As a direct and proximate result of the actions described herein plaintiff sustained actual damages including loss and deprivation of his personal property.

132.

As a result of the above, plaintiff is entitled to an award of compensatory damages against defendants in an amount to be determined at trial.

133.

**THIRD CLAIM FOR RELIEF**

Denial of Due Process and Equal Protection Defendants Refusal to Accommodate Plaintiffs Special Needs (14th Amendment).

(42 U.S.C. 1983)

134.

Plaintiff re-alleges each and every allegation of paragraphs 1 through 118, and incorporates those allegations herein by this reference.

135.

The Fourteenth Amendment of the United States Constitution forbids defendants from denying any person the equal access protection of the laws.

136.

Defendants refusal to accommodate plaintiffs special needs, denying him access to the courts, is a violation of the ADA and Constitution and deprives plaintiff of his right to equal access protection of the law and poses an atypical and significant hardship on Plaintiff.

137.

Defendants actions do not follow proper prison Rules and Regulations or applicable state and federal law. These wrongful, arbitrary actions deprived plaintiff of his constitutionally protected liberty without due process. Plaintiff is being subjected to ongoing discriminatory treatment as he is being denied access to library/resources available to inmates who are similarly situated. Plaintiff is a member of a protected class under the U.S. Constitution and the ADA and is being treated differently than those similarly situated.

138.

Defendants actions have been malicious, deliberate, intentional, and embarked upon with knowledge of, or in, conscious disregard of, the harm that would be inflicted on plaintiff, particularly given his severe, active SMI. These actions caused direct harm to plaintiff. As a result of this intentional conduct,

plaintiff is entitled to punitive damages against defendants in their individual capacities in an amount sufficient to punish them and to deter others from similar conduct.

139.

Defendants violated rights held by plaintiff which were clearly established, and no reasonable official similarly situated to defendants could have believed that his or her conduct was lawful or within the bounds of reasonable discretion. Defendants thus lack qualified or statutory immunity from suit or liability.

140.

As a direct and proximate result of the actions described herein plaintiff sustained actual damages including loss and deprivation of his personal property.

141.

As a result of the above, plaintiff is entitled to an award of compensatory damages against defendants in an amount to be determined at trial.

142.

## FOURTH CLAIM FOR RELIEF

Deprivation of Federal Civil Rights

Interference with First Amendment Protected Speech

(42 U.S.C. 1983)

143.

Plaintiff realleges and reincorporates each allegation contained in paragraphs 1 through 118.

144.

Plaintiffs communications with DRO and other ODOC personnel about the conditions of his confinement at TRCI and unlawful behavior by defendants, as well as access to the courts constitute speech that is protected by the First Amendment of the United States Constitution.

145.

Plaintiffs communications and access to the courts were lawful and permissible commentary by a private citizen on matters of public importance and did not violate prison regulations or compromise prison safety.

146.

Defendants interfered with plaintiffs ability to make complaints about the conditions of his confinement and to communicate with outside advocacy organizations, and access to the courts by unlawfully retaliating against him after making those complaints and communications. These actions frightened plaintiff and chilled his right to speak freely about the conditions of his confinement and of matters of public concern

147.

Defendants actions have been malicious, deliberate, intentional, and embarked upon with knowledge of, or in conscious disregard of, the harm that would be inflicted on plaintiff. These actions caused direct harm to plaintiff. As the result of this intentional conduct, plaintiff is entitled to punitive damages against defendants in their individual capacities in an amount sufficient to punish them and to deter others from similar conduct.

148.

Defendants violated rights held by plaintiff which were clearly established, and no reasonable official similarly situated to defendants could have believed that his or her conduct was lawful or within the bounds of reasonable discretion. Defendants thus lack qualified or statutory immunity from suit or liability.

149.

As a direct and proximate result of the actions described herein plaintiff sustained actual damages including a diminution of his ability to file grievances, discrimination complaints, pleadings, motions, and discovery in his two pending cases.

150.

As a result of the above plaintiff is entitled to an award of compensatory damages against defendants in an amount to be determined at trial.

151.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendants as follows:

a. For an award of economic and non economic damages in an amount to be proven at trial;

b. For an award of punitive damages in an amount to be proven at trial;

c. A declaration that the acts and omissions described herein violated plaintiffs civil rights;

d. Injunctive relief, ordering defendants and their agents and employees, to immediately return the legal library back to the MHU, and afford plaintiff adequate, meaningful access to the law library and its resources including adequate, meaningful books, assistance, and other such materials needed for an "adequate", "meaningful" law library, and replacement of antiquated N.E.O. typing machines.

e. For his reasonable attorney fees, costs, and disbursements; and

f. For such other relief as the law permits and justice requires.

DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38 and LR 38-1 plaintiff respectfully demands a jury trial.

Pursuant to 28 U.S.C. 1746 I declare under penalty of perjury that the foregoing is true and correct, except as to matters entered upon information and belief, and as to those I believe them to be true and correct.

Dated  12.7-20

> Robert l. Emery Jr. PRO SE
> TRCI #13650508
> 82911 Beach Access Rd
> Umatilla, Or. 97882

Complaint §1983                                                      Pg. 35 Of 35

CERTIFICATE OF SERVICE

I swear under penalty of perjury that on this date, I served copies of FIRST AMENDEND

COMPLAINT to the Clerk of the Court, Mary L. Moran. U.S. Courthouse, 1000 SW Third St, Portland

Or. 97204. via PACER.


Dated 12-7-20

Robert L. Emery Jr.
TRCI  #13650508
82911 Beach Access Rd
Umatilla, OR. 97882
Pro Se